May it please the Court, I'm Brian Hodge on behalf of the Plaintiffs and Appellants, the Trustees of the various Operating Engineers Trust Funds, which are TAP Partly Trust, subject to ERISA. Your Honors, there are four independent reasons why the summary judgment should be reversed, in this matter returned to the District Court for trial. And the first one is the community property issue. And if Your Honor graduated when I did from law school, his class wouldn't have helped, because there was a big seat change in 1975. I'm not sure. Well, okay, go ahead and tell me how it's changed that helps you. Well, in this case, it's not a single employer or an alter ego case, because we just have a single one entity, and that is the Marietta community of Janet Renee Petelski and Richard Petelski. So you're saying, basically, your interpretation of California community property law now is if a husband and wife have separate businesses, they aren't even linked at all, the statute, nonetheless, makes, because of the marital community, makes them, in effect, a joint employer? Correct. And it's not just... Based on the statute that talks about responsibilities on the management and control of the assets of the community? Correct, and Your Honor... And so as the statute's directed at working out the liabilities and the arrangements as between the marital couple, that California intended to create joint employer liability for every time that you have husband and wife operating businesses? The short answer is yes. And the other answer is... What's the California case that so holds, so we don't have to make up that law? NRA marriage of Pendleton and Fireman, the California Supreme Court in the year 2000, said that the current California family code provides, quote, gives both spouses equal control over management and control of community property, close quote. In what context was that statement made? This was the case involving a premarital agreement that there would be no spousal support upon divorce. I see. So it had nothing to do with the liability as joint employers to anybody else, right? It did not, Your Honor, but in looking at the policy behind that, it said that under current family law in California, both spouses have an equal right to manage community property, and because of that... I think you have to concede that they're not dispositive, that you're asking us to take another step. I think they're dispositive in this respect. I think that in order to have... Well, to me, a case is dispositive if it says that it applies directly to the facts that we have. And I don't see anything in the facts of either of those cases that tell us that. You're taking the principle and you're applying it to an entirely different situation. That's correct. They're not dispositive in that sense. Maybe I should say they're controlling in this sense. To me, it's they allow you to make that argument. But you would be asking us, you know, if we buy your argument, this would have to be an opinion, and by an opinion I am saying published because there is nothing out there that says exactly what you're saying. That's correct. And this is not a common fact situation. When most people decide to operate double-breasted, they incorporate or they form a limited liability company or they form a separate legal entity. And here we do not have a separate legal entity. We just have one entity. And when you don't have two companies, I don't think you can have a double-breasted situation. You have one company operating under two trade names. The reason that California Family Code Section 852 requires that in order to convert the community property into separate property, which is what Mrs. Patelsky would have had to have done to have in fact had a sole proprietorship, that it requires a writing between the spouses and notice to the third parties that that spouse is doing business with. Similarly, the obligation to contribute to Taft-Hartley trust funds is required to be in writing, and oral modifications are not recognized because the policy behind those national labor laws is there has to be certainty as to when employers must contribute to those funds. And more recently under the Multi-Employer Pension Plan Amendments Act, and specifically Section 515 of ERISA, there needs to be certainty as far as when these employees will get their promised pension benefits and health benefits under the applicable collective bargaining agreement. That's the other thing that bothers me a bit. This is a somewhat unusual case because the non-union operation was in existence to begin with. Let me finish. Okay, so then the wife sets up JR, and you're saying by virtue of her overtly being a union shop in effect, now a preexisting business that her husband was operating is now obligated to make the contributions. So employees who operate a business and employees who weren't at all subject to the contributions are now swept in by virtue of the decision to add another business. This is not the case of a preexisting union shop and then somebody running off and trying to evade by siphoning off all of the things we're familiar with. But they're creating a successor, trying to do it through a successor company. This posits a situation where you are saying now employees who never were covered are covered because of something that new has been created. Yes, I am, Your Honor. And there's no – I haven't been able to find a case that's directly factually analogous to that either. There is not, Your Honor. As we have published on for two reasons here. As the district court recognizes, this is a unique case in this circuit, and as far as I can tell in most other circuits as well. There have been other double-breasted cases in other circuits. I think D.C. Tile in the district, the D.C. circuit, and Belmont in the First Circuit where it dealt with these kind of issues. But this is not a successor situation. Right. This is not a new corporation to siphon off union work from a preexisting signatory company. But it is an attempt to evade collective bargaining obligations. Why is that? When Ms. Patelsky signed the agreement, she wanted to get work on the prevailing wage projects available to – preferentially to woman-owned businesses. But she didn't sign a project agreement. She didn't form a new entity to capitalize and perform that work. What she did was she used her preexisting company to take advantage of that, to take advantage of the skilled union labor, to take advantage of her ability to get work on those union projects. But she didn't accept all the benefits. Other signatory employers who signed that contract, they pay contributions in all hours worked by or paid to their employees who do covered work. And as the courts and other circuits have pointed out, these are pooled benefit trusts. And when an employer takes part of the benefit but doesn't take all of the obligations. I'm sorry. What are the – all of the obligation? There was no obligation preexisting her act. I mean, the folks who were operating her husband, that side of the business, heavy equipment, weren't subject to union benefits. And the union wasn't getting any contributions. That is correct. It's not – there was no – That's why the sequencing in this case is a bit curious. Well, there was no preexisting obligation until Ms. Patelsky signed the collective bargaining agreement. Right. So she – and she, to the extent that aspect is bidding on union-required jobs and the like, what is the benefit you're saying she – and burdens that she's not accepting? She's not – presumably she's not doing – this is new. This is all new compared to what was preexisting. So now you're saying part of the obligation is to impose upon the preexisting employment operation obligations to contribute even though that has been a non-union shop heretofore? Yes, Your Honor. First of all, it's not really – This would sort of come under what we call the no good deed goes unpunished. I don't think it's a good deed, Your Honor. I mean, if you look – Well, I mean, you get a new – you get a – you – they have – you've got a new union shop. And so that's a good thing for you. But that work would have been done union regardless because it was probably a prevailing wage project. And so she's – she is not creating additional union work, although she should have, because that's what she promised to do when she signed the agreement. She promised to pay contributions in all hours worked by or paid to her employees. But here she gets the union work, she gets the dispatch union operators to operate the scrapers, but she decides on a job-by-job basis when she's going to pay union wages and fringe benefits. And the employees really have no way of telling. I mean – Where's the evidence of that in the record? It wasn't that part of the sham aspect of what you were trying to prove under the alter ego theory? Evidence that she was changing it job-by-job, Your Honor. If you look at the time cards, I believe, which are at pages 173 to 176 of our Exeter record, you'll see that on the same day a union employee is being switched from one employer to the other. And I think you can reasonably infer from that that was on the same job. You can probably also infer that that was a union project of J.R. Scraper. And so what she is doing is she's telling her dispatch union employee, I'm not going to pay you in all hours you work. When you work, do mechanics work, or you work on another, what was historically a non-union job, I'm not going to pay your benefits. And that is not what she promised to do in the agreement. Let me ask you this. You didn't argue single employer theory in the district court. It is, however, mentioned in a footnote, sua sponte, essentially, by the district court. Why should we consider that here? It is pled in the complaint, Your Honor. When you plead the alter ego and after NorCal plumbing with the additional intent element, you are really pleading single employer. And if you look at the NorCal decision, which the district court relied on, that itself relied on Northwest Administrators, Inc. v. Con Iverson. Con Iverson was a single employer case. And that court just... You have to be careful on the single employer because, as I read NorCal, it uses single employer in two contexts. One is before you get to either the bargain unit issue or you get to the alter ego issue, you still have to get a predicate finding that they meet these, quote, baseline predicate of single employer. And I don't see that the district court overtly addressed that. It jumped right to the alter ego analysis. Has there been any actual finding, other than an assumption, that there is the first level single employer in this case? There has not been, and there should be a trial, Your Honor. But would the district court have even had jurisdiction over that? Yes. In Jim McNeff, Inc. v. Todd, the United States Supreme Court held that the very same master labor agreement at issue here is a pre-hire agreement under Section 8F, as opposed to a Section 9 agreement that's entered into after representation. Well, who makes the predicate finding? Can a district court do that? Yes. And in Con Iverson, this court said the district court has to make that finding. And if the court finds that there is a single employer, then the district court must apply the collective bargain agreement, unless the pre-hire agreement has been repudiated. But there's no bargaining unit here that's been determined, right? There is not, because there is not supposed to be. Can the district court determine a bargaining unit? No, and under 8F it does not. It's not a relevant issue. Jim McNeff v. Todd. That assumes that the employees are subject to the pre-hire agreement, though, right? In other words, the only employees you can pick up are ones who would fall within the agreement, which is a substitute for a determination of an individualized employer bargaining unit, but you couldn't get employee contributions for clerical. Correct. It's the ones doing covered work under the terms of the agreement. And so as long as you can prove that the RICS equipment employees are covered employees by job description that fit within the pre-hire agreement, then there's no bargaining unit determination that needs to be made? Correct. And that's admitted here. They admit that they took the union operators that were dispatched to J.R. Scraper and used them to operate the same equipment for a job that was entered into under the name RICS equipment. And under 8F, since this is a construction industry, which basically goes from job to job, it's not a long continuity of employment like you might have in a factory, Congress has said that you do not need to make a unit determination. Let me ask you this question. Let's assume that RICS had two full-time employee operators. They didn't hire them off through any halls or network or however. They've been there for 15 years each and always non-union. They hadn't asked to be in the union. Under your theory that once she opened up her union shop, those two employees would be automatically subject to the pre-hire agreement? Yes. Okay. The policy behind that's a little less compelling than it is when you have the dispatched employee who is then somehow coerced to working for the non-union company. But, yes, that is my argument. And since it is an 8F pre-hire agreement, the unit determination is not made. It just simply is not an issue. So the reason that the Supreme Court remanded South Prairie back for a unit determination does not exist here. And if I could, Your Honor, I'd like to reserve the rest of my time for rebuttal. Sure. Good morning, Your Honors. Greg Howd on behalf of the Respondents. I think that if counsel had his way, double-breasted operations would be inherently illegal and wrong. Well, he seems to say no because he seems to, if I understand his argument, maybe I'll paraphrase and he can correct me on rebuttal if I'm wrong. But he says that I understand that if this had been set up as two separate corporations, you could have accomplished this, or at least it would have been more accomplishable, but because of the community property laws, this is sole proprietorships, and so it's easy to see that this is just really one business. Well, I think that the community property argument is made, number one, out of desperation, because my opponent understands that they have no proof of alter ego. They can't prove that. So they have to argue something. So what they basically, in their oral argument at the district court level for the first time resorted to, was an argument that a husband and wife cannot own separate businesses without one business being obligated under the contracts of the other business. That's not what California's community property laws stand for. That's not the purpose of those laws. Those laws are simply to define the rights of spouses to control community assets and to divide property in the event of death or dissolution of marriage. Otherwise, what counsel would have this court hold, and it would be a very far-reaching decision for this court to adopt this community property argument, and I'll use an analogy. If my spouse owned a dress shop and it was her sole proprietorship, she published, she filed, recorded and published the fictitious name statement. I have nothing to do with it. I have my own law practice. If counsel's argument were adopted, my law practice would be obligated to pay the rent under her lease, if she also paid it, even if she also paid it. Now, I don't dispute that if my wife breaches a contract, and that's adjudicated, and it's determined that my wife is liable, my community assets are subject to levy. That's not disputed. However, that's very different than my wife complying with all of her business obligations, which, by the way, J.R. Rentals did. There's no evidence in this record, it's undisputed, that J.R. Rentals submitted to every audit, paid every benefit they were entitled to, and she complied. So what they're saying is, despite the fact that my wife is current on her lease, and I'm current on my lease, I have to pay her rent, and she has to pay mine. So essentially there's double payment under any contract that either my company or my wife's company has entered, and that is absurd. Well, I'm not sure you'd have to make double payment. They can look to either one of the two businesses for the lease, but not double. Right, but in this case, Your Honor, J.R. Rentals complied and paid under the contract. But their argument is that Rick's equipment didn't, and that wing of the business didn't. Rick's equipment was not signatory to the contract. They were not a party to the contract. What they're trying to say is that they were solely because the owners of the two businesses are married. Well, okay, so let's skip over that then. You say there's no evidence of alter ego. Correct. Let's go back the other direction, back to the predicate, which is before you get to either that or the bargaining issue, there has to be a single ployer at the predicate stage. The district court didn't specifically address that. If the district court were to address that, where do you stand on that? Does that go back for a summary judgment proceeding or for further trial or what? No, sir. The district court, and I believe correctly, determined that that issue was moot. Because what the district court focused on and analyzed was the determinative issue in any alter ego case with regard to the fraud aspect of it. And this court and every other district has been very consistent with regard to one thing on these double-breasted cases. And that is that in order to ultimately recover, you must determine that the non-union company was established as a sham. That's under the alter ego. Correct. What about on the notion that NorCal posits, which is you don't have to go to alter ego if there is a single employer and then you can determine, or the NLRB determines that the employees are properly within the same bargaining unit. That's what the NLRB would do. They'd say, well, they're both heavy equipment operators. It's clearly a unified commonality of interest. Therefore, it would be a proper bargaining unit. As I read NorCal, you don't have to go the alter ego prong, then. Well, I'm, you know, respectfully not sure that I interpret it that way. It's my understanding that in order to prevail on an alter ego claim in the double-breasting realm, there would necessarily have to be a determination of single employer, and then you take the next step into alter ego. I will also say, Your Honor, that the plaintiff, the appellant, in its pleadings with regard to this motion, acknowledged that they were not pursuant, that all four of the causes of action were based on an alter ego theory. That is in the record. That was a specific inquiry that was made by the court, I believe, because the pleadings were somewhat ambiguous. There was really no identification of the theory. And the only differences between the causes of action were that the first two only involved Mrs., and the third and fourth involved Mr. N. And it was made, that was cleared up in the motion pleadings at the district court level by counsel confirming that all of the causes of action were dependent upon an alter ego determination. I don't think you can have your cake and eat it, too. I don't think that you can come in here now on appeal. There's a very clear estoppel argument. If the appellants are now going to try to argue a different theory that they expressly confirmed was not part of their pleadings below. Let me ask you this. I hear your argument, and that's helpful. I'm looking at NorCal, and NorCal says that under both theories, that is the single employer and alter ego theories, the two theories, unfortunately uses the same terminology for the baseline inquiry, which is under both theories, the district court must first determine whether the two firms are a single employer by measuring the degree of common ownership, management operations and labor relations. If this threshold requirement is met, the next step depends on which theory is pursued. Now, the first theory it talks about now is the quote single employer theory, which is subsequent to the prior determination I just read. The second alternative is the alter ego theory. Just for purposes of getting clear for me in any event, assuming it isn't waived and whatever, and I have your opportunity to argue it, where are we in this case if we were to say it was viable to pursue the single employer theory where the district court must defer to the NLRB to determine whether the employees of both the union and non-union firms constitute an appropriate bargaining unit. Now, there clearly hasn't been done here, but the argument being made is you don't need to here because with a firm as these employees are essentially doing covered work, 8F of the NLRA excuses it, the bargaining unit determination. So if we went down that path, not say we're going to, where are we then in so far as... In this, just so that I answer your question, I believe that you're asking me what the effect is. Where does that leave us on this record? Well, single employer was obviously not pled, not raised, not argued below, waived. I believe that if the court, if this court were to say, we want to remand this case or somehow get a determination on this single employer issue, it would really be a single employer issue. It would be a waste of court time in light of the fact that the determinative alter ego issue has already been decided. And there is a case law on that issue in the Carpenters Local Union case. The court actually talked, wait, I may have the wrong case. It's actually the, yeah, I'm sorry, it's the UA Local 343 case. It says, but appellees bypass the single employer theory and instead invoke the alter ego theory. To prevail on the alter ego theory... That's NorCal, I'm sorry. I believe it's the Con Iverson case, I'm sorry, where the court actually said that the district court should have made the alter ego finding first. And I can read, I found it, I have it in front of me. It's the Con Iverson case at page 1340. The court in that case, and it's not from this, well, it is from this district, I believe. It says, before considering the existence of potential representational issues, the district court should have decided two potentially dispositive questions which do not concern representation. First, the court should have determined whether the Con Iverson Trucking Inc. was in fact a successor or alter ego, which could be bound by the alter ego proprietorship. So basically what they're saying there is the single employer issue becomes moot if there's a finding in favor of the employer on the alter ego issue. There's no point in even addressing what to do with the single employer issue. It's an irrelevant, it's a real irrelevant exercise once there's been a determination that the alter ego issue is not in favor of the single employer, that with regard to the alter ego issue. Well, I think you're maybe over-reading Con Iverson. I think what it was saying is that if under that alter ego theory they find in favor of the union, you don't have to go to a bargaining unit determination. You can bypass it. You said if they find in favor of the employer. I'm not sure that's... They have found in favor of the employer. The question is whether there's an alternative prong that was preserved that would have avoided alter ego. Anyway, we'll have to work it out. I'd like to ask you a question about if on the attorney's fees, that part of it, the, we review that for an abuse of discretion. And there were certain, you know, say if I were the district court judge and I said I think that this was in bad faith, I think that they, you know, they were just harassing and all of this and there was a lot of discovery and I think that this is just union bullying and all of that. That would be the factual finding. But here the district court made certain factual findings about that it wasn't in bad faith. The court didn't think that this was a frivolous issue. So on an abuse of discretion standard, how do I get past that if I wanted to say you were entitled to attorney's fees? I understand that and I do understand that it's an abuse of discretion standard and I understand that that's a very difficult task that I have to convince the court that attorney's fees should be awarded. Can you point to any error of law that the district court made? It went through the factors, you know, the factors that it was required to go through, analyzed those, made certain factual findings. I believe, I do not believe that there was a legal error. I believe that the court has the discretion to deny attorney's fees to the prevailing employer, unfortunately. Certainly the court did what it was obligated to do with regard to addressing each of the HUML factors. I don't question that. I think that there has to be a case, there has to be a fact situation whereby the employer prevails and the employer prevails. In which it would be an abuse of discretion to deny attorney's fees. And frankly, having lived through this case for two years, and this is in the record, I'm not going outside the record. This case was litigated as abusively as any case I've handled in 20 years. Well, but see, that would be, if the court had found that, and said you get your attorney's fees, I wonder, would I be in the same situation as if the court found the way that it did? Because I don't get to put myself in the place of the district judge. I could view this completely differently, and I could say, those are excellent arguments, had I been there, great. But I wasn't, and then when there are factual findings, that's what I'm asking. I understand that, and no ma'am, I cannot claim that Judge Phillips made any error of law. She exercised her discretion. My argument on the appeal of the attorney's fee issue is that... It was so outrageous that it cries out for abuse of discretion. Well, in light of the fact that it was summarily adjudicated in favor of the defendant, in light of the fact that there was absolutely no admissible evidence in this record that union employees were working for both companies... He says there is. He said that there are these timesheets. The objection to the timesheets was sustained. I objected based upon a foundation argument. They were attached, I believe, to counsel's declaration. None of the people that were identified in these timesheets were established to be union members. There was no identification in the timesheets of whether projects were union projects, where these people were working. And the judge sustained the evidentiary objection to those timesheets. So basically what you had were pieces of paper with people's names on them. You couldn't take a leap from that to determining, number one, that they were full-time, 40-hour-a-week union employees. Number two, that they were doing union work. So basically what the plaintiff did was, and this is in the record, intimidated and threatened this Gerald Tappe person in an attempt to get him to falsely state that Rick's equipment held itself out as J.R. Rental. Mr. Tappe was an inactive union member. He refused to do it. And I believe my supplemental excerpts of the record enclose portions of his deposition transcript where he talks about that. Basically they, counsel said, look, I've worked too hard on this case to let it go down the tubes, and you're going to sign this declaration. And he said, I can't sign it if it's not true. So there was no evidence to establish this issue that full-time, 40-hour-a-week union employees were splitting time between the two companies. That's all made up. There's no evidence on that whatsoever. So basically I would just conclude by asking the court to not create new law that greatly expands the purpose and effect of our community property laws and to affirm this judgment. Thank you. If I may come back just to a couple of points, Your Honor. Would you make sure my assumption of what you were saying at the outset about how they could have done this without creating union liability is correct? That is correct, Your Honor. If they had established a second legal entity, and most important in my mind, if they had not shared union employees, I would not be here today. Just as the Supreme Court said in the Howard Johnson case, that a successor corporation could avoid the issue of do they have to bargain or not, simply by not choosing to take advantage of the pre-existing labor force. Here, if they set up a new corporation, did not switch the employees back and forth through a dispatch to J.R. Schwartz. And your evidence of that is what he said the district court excluded on objection to lack of foundation? I don't believe it is, and I apologize if I'm not getting the record accurate, but this is Exhibit 40. What I did sustain the objection to are some summaries that my associate prepared to summarize some of the documents. What I'm referring to is Exhibit 40, and as I recall, that was not, there was no sustained objection to Exhibit 40. But without that, the summaries in Exhibit, I think it was 50 or 55, were sustained. So what is Exhibit 40? They're the actual time cards that show... And they establish that the names are actual union or non-union? We can tell from the time cards what they are? You can reasonably infer that, Your Honor, because it has a working... Does the Supreme Court do so, or how did the district court deal with that? District court did not deal with it as far as I know, Your Honor, because it held that it did not reach that issue because looking at the intent issue only. Why did you offer them on the intent? You were just arguing, I thought you were talking about the alter ego theory. You said this came out of the community property side of things. So what were they offered for? They were offered to show that employees on whose behalf Ms. Patelsky had promised to pay French benefit contributions were performing work for which contributions were not paid. What was that relevant to, if not the alter ego theory? Well, it's relevant to the alter ego theory and all the other theories. The other theories are that you just have a single entity under California law. The counsel said you disavowed. Were you the trial counsel? I was not. Did trial counsel disavow the single employer theory, as counsel argued for the employer? No, Your Honor. At argument on the summary judgment motion, what trial counsel argued was, is that this is just a single enterprise, one company. That doesn't tell us anything, because NorCal uses that as the predicate to both prongs. The question is, were you pursuing an alter ego theory under the rule of law? We did not raise Section 8F in the trial court, Your Honor. I didn't think you did, okay. But as a matter of law, and this court can determine issues that are purely a matter of law that don't require further development of the factual record in the trial court. Well, I'm not sure. All right. We'll have to decide that. I'm still trying to understand then, this Exhibit 40, was that ever addressed at all by the district court? I don't believe it was, Your Honor, at least not in substantive terms. All right. And going back to Con Iverson, Your Honor, that is the case that NorCal relies on. Con Iverson itself follows and relies on Roberts v. Ayala, which is this court's opinion, dealing with the same master labor agreement and a single employer issue, where this court said that if there is a single employer and it is an 8F agreement, you do not have to worry about that second prong of proving the intent, because there is no unit to prove the intent. There is no determination to be made. And I would cite to that, and the other cases distinguished in Con Iverson cases are all single employer cases as well. And as far as the sham that existed here, and this is not the typical sham that's been involved in previous cases that have been decided by the courts. This is where an employer, as I said before, is trying to take advantage of the prevailing wage work available, preferentially to women-owned businesses. And as the alter ego and single employer laws have been developed, you know, originally started out looking at Section 7 and Section 8 rights under the National Labor Relations Act and under the labor management, the LMRB, the Taft-Hartley Act. The courts now also look at the more recent MEPA amendments, the Multi-Pension Plan Amendments Act, and again, particularly Section 515. And what the courts have said is that there needs to be, to comply with national labor policy, certainty as far as when employers are going to make contributions on behalf of their employees, so employees can be sure of when they're going to get their benefits that have been promised to them. And there's also policy that you don't want that employer shifting the burden onto other signatory employers, or ultimately the taxpayers. You would have, in other words, you can prevail in this case even if they had set them up as separate legal entities? If they had switched the employees back and forth, I would still be here. Yes, and they did do that here, Your Honor. Okay, thank you. I appreciate the argument. The case argument is submitted. We will be in adjournment. Thank you.
judges: Fisher, Callahan, Strom